## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE COFFMAN, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| MERITOR, INC., WILLIAM R. NEWLIN, CHRIS VILLAVARAYAN, STEVEN BERINGHAUSE, JAN A. BERTSCH, RODGER L. BOEHM, IVOR J. EVANS, ELIZABETH A. FESSENDEN, FAZAL MERCHANT, THOMAS L. PAJONAS, and LLOYD G. TROTTER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Catherine Coffman ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder action brought by Plaintiff against Meritor, Inc. ("Meritor" or the "Company") and the members of Meritor's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Meritor to Cummins Inc. ("Cummins") (the "Proposed Transaction").

2.      On February 21, 2022, Meritor entered into an Agreement and Plan of Merger with Cummins Inc. ("Cummins") and its wholly owned subsidiary Rose NewCo Inc. ("Merger Sub") (the "Merger Agreement").  Under the terms of the Merger Agreement, Meritor stockholders will be entitled to receive $36.50 in cash per share of Meritor common stock.

3.      On April 18, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Meritor stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); and (ii) potential conflicts of interest faced by Company insiders.

4.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Meritor stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5.      The special meeting for Meritor stockholders to vote on the Proposed Transaction is currently scheduled for May 26, 2022.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Meritor's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.     Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Meritor's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of shares of Meritor common stock.

10.     Defendant Meritor is a Delaware corporation, with its principal executive offices located at 2135 West Maple Road, Troy, Michigan 48084.  Meritor's shares trade on the New York Stock Exchange under the ticker symbol "MTOR."

11.     Defendant William R. Newlin has been Independent Chairman of the Board and a director of the Company at all relevant times.

12.     Defendant Chris Villavarayan has been Chief Executive Officer, President, and a director of the Company at all relevant times.

13.     Defendant Steven Beringhause has been a director of the Company at all relevant times.

14.     Defendant Jan A. Bertsch has been a director of the Company at all relevant times.

15.     Defendant Rodger L. Boehm has been a director of the Company at all relevant times.

16.     Defendant Ivor J. Evans has been a director of the Company at all relevant times.

17.     Defendant Elizabeth A. Fessenden has been a director of the Company at all relevant times.

18.     Defendant Fazal Merchant has been a director of the Company at all relevant times.

19.     Defendant Thomas L. Pajonas has been a director of the Company at all relevant times.

20.     Defendant Lloyd G. Trotter has been a director of the Company at all relevant times.

21.     Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22.     Founded in 1909, Meritor designs, develops, manufactures, markets, distributes, sells, services, and supports integrated systems, modules, and components in North America, South America, Europe, and the Asia Pacific.  The Company operates through two business segments: (i) Commercial Truck; and (ii) Aftermarket and Industrial.  It offers axles, including front steer and rear drive axles for medium- and heavy-duty commercial vehicles, heavy-duty trailer axles, suspension modules and brake products comprising drum and disc brakes, universal joints and driveline components, trailer air suspension systems and products, transfer cases and drivelines, and advanced suspension modules for use in light-, medium- and heavy-duty military tactical wheeled vehicles.  Meritor also offers air brakes and wheel-end components to medium-

and heavy-duty commercial vehicle manufacturers, and electric drive systems for terminal tractors and medium and heavy-duty trucks and buses.  In addition, Meritor sells complementary products, including third-party and private label items, such as brake shoes and friction materials, automatic slack adjusters, yokes and shafts, wheel-end hubs and drums, ABS and stability control systems, shock absorbers and air springs, and air brakes.  These products are sold under the Meritor, Euclid, Trucktechnic, US Gear, AxleTech, and Mach brands primarily to original equipment manufacturers, their parts marketing operations, and their dealers, as well as other independent distributors and service garages in the aftermarket industry.

**The Proposed Transaction**

23.     On February 22, 2022, Meritor announced that it had entered into the Proposed Transaction, stating, in relevant part:

> **Columbus, Indiana and Troy, Michigan (Feb. 22, 2022)** – Cummins Inc. (NYSE: **CMI**) and Meritor, Inc. (NYSE: **MTOR**) today announced that they have entered into a definitive agreement under which Cummins will acquire Meritor, a global leader of drivetrain, mobility, braking, aftermarket and electric powertrain solutions for commercial vehicle and industrial markets. Under the terms of the agreement, Cummins will pay $36.50 in cash per Meritor share, for a total transaction value of approximately $3.7 billion, including assumed debt and net of acquired cash.
>
> "The acquisition of Meritor is an important milestone for Cummins. Meritor is an industry leader, and the addition of their complementary strengths will help us address one of the most critical technology challenges of our age: developing economically viable zero carbon solutions for commercial and industrial applications," said Tom Linebarger, Chairman and CEO, Cummins. "Climate change is the existential crisis of our time and this acquisition accelerates our ability to address it. Our customers need economically viable decarbonized solutions.
>
> "In addition, our communities and our planet depend on companies like Cummins to invest in and develop these solutions," Linebarger added. This acquisition adds products to our components business that are independent of powertrain technology, and by leveraging our global footprint we expect to accelerate the growth in Meritor's core axle and brake businesses. There is also a compelling financial case for this acquisition, with significant synergies expected in SG&A, supply chain operations and facilities optimization."

"This agreement with Cummins builds on Meritor's track-record of outstanding performance and service to our customers. Our offerings will continue to play an important, strategic role as commercial vehicles transform to become electric and autonomous," said Chris Villavarayan, CEO and President of Meritor. "At closing, Meritor shareholders will receive immediate value at a compelling 48% premium to the Meritor trading price as of Feb. 18, 2022, and customers will benefit from enhanced capabilities in technology and the ability to accelerate investment in axle and brake development and EV adoption. Our global team members and their commitment to excellence helped make this transaction possible and will fuel our innovations as we embark on this next chapter in our longstanding legacy."

**Strategic Rationale**

Meritor is an industry leader in axle and brake technology. The integration of Meritor's people, technology and capabilities will position Cummins as one of the few companies able to provide integrated powertrain solutions across combustion and electric power applications. This is the right time to pursue this combination as demand for decarbonized solutions accelerates. Cummins believes eAxles will be a critical integration point within hybrid and electric drivetrains. By accelerating Meritor's investment in electrification and integrating development within its New Power business, Cummins expects to deliver market-leading solutions to global customers.

Meritor has a legacy dating back more than 110 years. The company, which is headquartered in Troy, MI, has more than 9,600 employees serving commercial truck, trailer, off-highway, defense, specialty and aftermarket customers around the world.

The acquisition of Meritor is expected to be immediately accretive to Cummins' adjusted EPS and is expected to generate annual pre-tax run-rate synergies of approximately $130 million by year three after closing. Cummins intends to finance the transaction using a combination of cash on the company's balance sheet and debt and remains committed to maintaining its strong credit ratings.

The Board of Directors of Meritor has unanimously approved the agreement with Cummins and recommends that Meritor shareholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction. The transaction, which is subject to customary closing conditions and receipt of applicable regulatory approvals and Meritor shareholder approval, is expected to close by the end of the calendar year.

Cummins will hold a call with analysts and investors at 9:30 AM EST today to discuss the benefits of this transaction. Participating in that call will be Tom Linebarger, Chairman and CEO of Cummins, and Mark Smith, Cummins' Chief Financial Officer and Chris Villavarayan, CEO and President of Meritor.

Morgan Stanley & Co. LLC is serving as financial advisor to Cummins and Mayer Brown is serving as legal advisor. J.P. Morgan Securities LLC is serving as financial advisor to Meritor and Wachtell, Lipton, Rosen & Katz is serving as legal advisor.

## The Materially Incomplete and Misleading Proxy Statement

24.     On April 18, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that Meritor stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan; and (ii) potential conflicts of interest faced by Company insiders.

*Material Misrepresentations and/or Omissions Concerning Meritor's Financial Projections and J.P. Morgan's Financial Analyses*

25.     The Proxy Statement fails to disclose material information concerning the financial projections for Meritor.

26.     With respect to Meritor management's projections, the Proxy Statement fails to disclose all line items underlying: (i) Adjusted EBITDA; and (ii) Unlevered free cash flow.

27.     The Proxy Statement also fails to disclose material information concerning J.P. Morgan's financial analyses.

28.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the inputs and assumptions underlying the discount rates ranging from 9.75% to 10.75%; and (ii) Meritor's terminal values.

29.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies analyzed by J.P. Morgan.

30.     With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose: (i) the individual financial metrics for each of the selected transactions analyzed by J.P. Morgan; and (ii) the Company's Adjusted EBITDA for the twelve months ended December 31, 2021.

31.     With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

32.     The Proxy Statement fails to disclose material information concerning Company insiders' potential conflicts of interest.

33.     For example, the Proxy Statement fails to disclose whether any members of Meritor management have secured or are anticipated to secure future employment with the combined company.

34.     The Proxy Statement also fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Meritor directors and officers and Cummins, who participated in all such communications, when they occurred and their content. The Proxy Statement similarly fails to disclose whether any of Cummins' proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

35.     In sum, the omission of the above-referenced information renders statements in the "Certain Meritor Unaudited Prospective Financial Information," "Opinion of Meritor's Financial

Advisor," "Background of the Merger," and "Interests of Meritor's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Meritor will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Meritor**

36.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Meritor is liable as the issuer of these statements.

38.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

41.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Meritor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Meritor and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

48.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Meritor, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  May 10, 2022                                    **ACOCELLI LAW, PLLC**

By    */s/ Richard A. Acocelli*
                                                        Richard A. Acocelli
                                                        33 Flying Point Road, Suite 131
                                                        Southampton, NY 11968
                                                        Tel: (631) 204-6187
                                                        Email: racocelli@acocellilaw.com

                                                        *Attorneys for Plaintiff*